CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
DEC 06 2011
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TERRY L. ROBERTSON, | ) CASE NO. 7:11CV00116 |
| Plaintiff, | ) |
| v. | ) REPORT AND RECOMMENDATION |
| MICHAEL J ASTRUE,<br>Commissioner of Social Security, | ) |
| | ) By: B. Waugh Crigler |
| Defendant. | ) U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's August 27, 2004 application for what is now a closed period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423 is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this action from the docket of the court.

Plaintiff began this stage of his journey through the disability claims process on August 27, 2004, when he filed his application for a DIB and SSI benefits, alleging February 23, 2002 as the onset date. (R. 387-91, 527-33.) This later was amended on the record of a February 9, 2006 hearing before a Law Judge to August 5, 2004. (R. 318.) Suffice it to say that his claims were denied at all levels of administrative review, as a result of which plaintiff sought judicial review in

this court. *See Robertson v. Barnhart*, 7:06CV00729. Upon judicial review, the Commissioner's final decision was reversed, and the case was remanded to the Commissioner for further proceedings in accordance with a Memorandum Opinion and Order entered by the Honorable Michael F. Urbanski, United States Magistrate Judge, entered on December 3, 2007.[1]

In the decision issued on November 9, 2009, the Law Judge found that plaintiff had not engaged in substantial gainful activity since his amended alleged disability onset date, and that he remained insured through December 31, 2005[2]. (R. 839.) The Law Judge determined plaintiff suffered the following severe impairments: degenerative disc disease, low back pain and depression. (R. 840.) The Law Judge found that that he did not suffer a severe impairment or combination of impairments which met or equaled a listed impairment. (R. 842.) The Law Judge further found that prior to the date he became disabled, December 11, 2006, plaintiff retained the residual functional capacity ("RFC") to perform light work, except that he could not tolerate frequent interaction with the public, co-workers, or supervisors, and he was mildly limited in dealing with work stresses and ordinary changes in routine. (R. 843.) The Law Judge believed that, beginning on December 11, 2006, plaintiff retained the RFC to perform only sedentary work, except that he could occasionally and frequently lift/carry less than ten pounds, stand/walk for a total of less than two hours in an eight-hour workday, and could sit for a total of less than two hours in an eight-hour workday. (R. 845.) He found that since February 23, 2002, plaintiff had been unable to perform any past relevant work. (R. 846.) The Law Judge concluded that prior to December 11, 2006, plaintiff was not disabled under the Medical-Vocational Guidelines

---

[1] Judge Urbanski since has been elevated to United States District Judge.
[2] In order to qualify for disability insurance benefits, plaintiff must establish that he became disabled prior to the expiration of his insured status, December 31, 2005. *See* 20 C.F.R. § 404.131(a).

2

("grids")³. (*Id.*) However, the Law Judge found that beginning December 11, 2006, there were no jobs that plaintiff could perform. (R. 848.) The Law Judge ultimately found that plaintiff was not disabled prior to December 11, 2006, but that he became disabled on that date and continued to be disabled through the date of the Law Judge's decision. (*Id.*) In sum, plaintiff's SSI benefits were granted as of December 11, 2006, but his claim for disability insurance benefits was denied on the basis that he did not become disabled until after his insured status expired.

Plaintiff appealed the Law Judge's partially-favorable November 9, 2009 decision to the Appeals Council. (R. 826-829.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 826.) This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

---

³The grids, 20 C.F.R. Part 404, Subpart P, Appendix 2, are tables the Commissioner can apply when no non-exertional limitations exist, "'that indicate the proper disability determinations for various combinations of age, education, and previous work experience in conjunction with the individual's RFC, i.e., his maximum capacity for sustained performance of the physical and mental requirements of the job.'" *Christmas v. Astrue,* 2010 WL 1027492, * 3 n. 4 (W.D.Va. March 17, 2010) (quoting *Hall v. Harris,* 658 F.2d 260, 265 (4th Cir. 1981)).

3

In a brief filed in support of his motion for summary judgment, plaintiff initially argues that pursuant to Social Security Ruling ("SSR")[4] 83-20 and *Bailey v. Chater*, 68 F.3d 75 (4th Cir. 1995), the Law Judge was required to call upon the services of a medical advisor to determine his alleged disability onset date. (Pl's Brief, pp. 12-15.) Specifically, plaintiff contends that a medical advisor was necessary to inform the Law Judge in making the determination of whether he became disabled prior to the date his insured status expired. (Pl's Brief, p. 14.)

SSR 83-20 provides that a claimant's disability onset date must have a legitimate basis, and if it only can be inferred, the Law Judge should enlist the services of a medical advisor. Even so, the Ruling does not require that the Law Judge consult with a medical advisor in every case where the date of disability onset must be inferred. *Bailey*, 68 F.3d at 79. "[I]f the evidence of onset is ambiguous, the [Law Judge] must procure the assistance of a medical advisor in order to render the informed judgment that the Ruling requires." *Id.* In this case, the evidence of disability onset is not ambiguous.

At this point, the undersigned notes that plaintiff bears the burden of proving he became disabled prior to December 31, 2005, the expiration of his insured status. *See Malbone ex rel. Alsaleh v. Astrue*, 2011 WL 3511283, *3 (E.D.Va. August 11, 2011). The Commissioner's final decision concluding plaintiff failed to meet that burden is supported by substantial evidence.

On August 17, 2004, plaintiff presented for an initial evaluation of his physical symptoms by Murray E. Joiner, Jr., M.D., a physical medicine and rehabilitation specialist. (R. 448-451.) Plaintiff presented with complaints of right shoulder and neck pain, low back pain, and right knee

---

[4] Social Security Rulings are the Social Security Administration's interpretations of the Social Security Act. *Pass v. Chater*, 65 F.3d 1200, 1204 n. 3 (4th Cir. 1995). "[T]hey are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Id.* (citing *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989)).

4

pain. (R. 448-449.) Dr. Joiner diagnosed the following: chronic right cervicothoracic spasms and pain (myofascial pain syndrome); right supraspinatus tendonitis; right de Quervain's tendonitis; chronic low back pain and mild spasms; lumbar pars defect by history; chronic right knee pain status-post puncture wound by history; and stocking glove distal right lower extremity pain and dysesthesias, rule out referred pain secondary to above versus chronic radicular process. (R. 451.) Dr. Joiner then referred plaintiff for a functional capacity evaluation to assess his work capacity. (*Id.*)

Upon that referral, physical therapist Bill Mercer conducted a functional capacity evaluation on March 15, 2005. (R. 461-476.) Mercer opined that plaintiff exhibited "unreliable efforts that were diminished or biased by disability behaviors or active choice to portray efforts that are less than true." (R. 461.) He did not believe the information he obtained could "be safely used to consider return to work possibilities." (*Id.*) Only 48% of the validity items scored as valid, and Mercer noted that the hand grip tests "probably do not represent his actual maximum capacity." (*Id.*)

Plaintiff returned to Dr. Joiner following the March 15, 2005 evaluation. (R. 477-478.) Dr. Joiner noted that plaintiff was trying to get him to help with his quest to get disability benefits. (R. 477.) Dr. Joiner noted that "the assistance we will give has been the Functional Capacity Evaluation, which he is to take to his attorney, to utilize as he sees fit. This speaks for itself. We will not elaborate further." (*Id.*) Dr. Joiner then noted that the "[t]est was invalid with evidence of symptom exaggeration/inappropriate illness behaviors per our review." (R. 478.)

The evidence also supports the administrative determination that plaintiff's mental impairments did not render him disabled prior to December 31, 2005. A psychological

5

examination performed by Belinda G. Overstreet, Ph.D., LCP on March 13, 2006, and her report issued on March 23, 2006, essentially reveal that plaintiff did not suffer work-preclusive mental limitations. (R. 503-510.) Prior to rendering her diagnosis, Dr. Overstreet observed plaintiff's history of responding to assessments "with an exaggeration of symptoms," which rendered those assessments "questionable." (R. 506.) Though she further indicated that plaintiff likely was to be more reliable in the future, she acknowledged that "the veracity of his report of symptoms is questionable." (R. 507.)

Dr. Overstreet found that plaintiff suffered the following: grief reaction, uncomplicated; rule out somatoform pain disorder; rule out mood disorder, NOS; rule out schizoaffective disorder; and rule out anxiety disorder, NOS, with a global assessment functioning ("GAF") of 69[5]. (*Id.*) The psychologist believed plaintiff was able to understand, recall, and carry out simple instructions and suffered only mild impairments in attention, concentration, and memory. (*Id.*) Dr. Overstreet further believed that plaintiff's mental impairments were "likely to mildly impair his ability to understand, recall, and carry out complex/detailed instructions," but that he was able to understand basic work rules and make simple work decisions. (*Id.*) The psychologist found that the reported fact that his daughter manages his funds was the result of his "lack of funds more than his competency to manage funds." (*Id.*) She concluded that plaintiff's reported motivational problems were likely to cause him to have some difficulty persisting with tasks, and his reported

---

[5] GAF ratings are subjective determinations based on a scale of zero to one hundred of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual Mental of Mental Disorders 32 (4th ed. 2000) ("DSM–IV Manual"). A GAF of 61 to 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasionally truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships. *Id.* at 34.
6

suspiciousness of other people was likely to impair his ability to work cooperatively with others. (*Id.*) Finally, Dr. Overstreet opined that plaintiff was a poor candidate for working with the public and was likely to require additional supervision to assist him with task persistence and to mediate interactions with coworkers. (*Id.*) Nothing in her report compelled the Law Judge to find plaintiff disabled as the result of any mental impairment. In fact, the report provided substantial evidence upon which to conclude that plaintiff could perform work-related activities.

The Law Judge's finding that plaintiff was not disabled prior to December 31, 2005 is further supported by the opinions offered by the State Agency record reviewing physicians. On October 20, 2004, State Agency record reviewing physician Frank M. Johnson, M.D. found that plaintiff could lift and/or carry (including upward pulling) twenty pounds occasionally; lift and/or carry (including upward pulling) ten pounds frequently; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; and his ability to push and/or pull (including operation of hand/foot controls) was unlimited, other than any limitations on his ability to lift and/or carry. (R. 453.) The physician further found that plaintiff could frequently climb ramps and stairs, but he could never climb ladders, ropes, or scaffolds. (R. 454.) Dr. Williams concluded that plaintiff suffered no manipulative, visual, communicative, or environmental limitations. (R. 454-455.) These findings were affirmed by Donald R. Williams, M.D. on December 27, 2004. (R. 458.)

Next, plaintiff contends that the Law Judge erred by discounting the opinion offered by treating source Jan Pijanowski, M.D. that his disabling functional limitations existed as far back as January 1, 2000. (Pl's Brief, pp. 15-16.) In that regard, it is well settled that a Law Judge and the Commissioner must consider the following in evaluating and weighing medical opinions: "'(1)

whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'" *Hines v. Barnhart,* 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson v Barnhart,* 434 F.3d 650, 654 (4th Cir. 2005)).

The evidence of a treating doctor generally should be accorded greater weight. *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992). Yet, when that physician's opinion is not supported by the objective medical evidence or is inconsistent with other substantial evidence, it may be given "significantly less weight." *Craig,* 76 F.3d at 590. Moreover, where the evidence is such that reasonable minds could differ as to whether the claimant is disabled, the decision falls to the Law Judge, and ultimately to the Commissioner, to resolve the inconsistencies in the evidence. *Johnson,* 434 F.3d at 653; *Craig,* 76 F.3d at 589.

Dr. Pijanowski completed a physical assessment on May 18, 2007[6]. (R. 958-961.) Dr. Pijanowski found that plaintiff suffered work-preclusive limitations at that time, but she went further to opine that these limitations existed as far back as January 1, 2000. (R. 961.) The Law Judge gave "significant weight" (R. 846) to the limitations as of the date of her assessment, but he did not credit the physician's opinion that these limitations existed as far back as January 1, 2000 because he found this to be inconsistent with the medical evidence for that period.

As the Commissioner points out, the discernable record indicates that Dr. Pijanowski provided only three treatment notes which are dated between March and July 2007. (Commissioner's Brief, p. 16.) There are no treatment records from this physician before then, nor is there any additional support for her bare conclusions relating plaintiff's 2007 limitations

---

[6] While the List of Exhibits indicates that Dr. Pijanowski's assessment was completed on May 18, 2007, one could interpret the handwritten date to be May 19, 2007. (R. 961.)

8

back to his alleged closed period of disability. Thus, the Law Judge's findings as to Dr. Pijanowski are supported by substantial evidence.

Plaintiff next alleges that the Law Judge erred in finding that he was not fully credible. (Pl's Brief, pp. 16-19.) Specifically, plaintiff contends that the Law Judge failed to properly consider the evidence of record and erred in finding that his allegations of disabling limitations were not fully credible. (Pl's Brief, p. 16.)

There is a two-step process for evaluating subjective complaints. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). The two-step process corresponds with Social Security Ruling ("SSR") 96-7p and the regulations at 20 C.F.R. § 404.1529. At step one, the Law Judge must determine whether there is objective medical evidence showing the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. *Craig*, 76 F.3d at 594. At step two, the Law Judge must evaluate the intensity and persistence of the claimant's pain or other symptoms alleged based on all the evidence in the record, including the claimant's testimony. *Id.* at 595. Step two of the credibility analysis involves consideration of the claimant's statements of pain and other alleged symptoms, as well as factors such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatments, other than medication, received for relief of symptoms; (6) measures used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions caused by symptoms. 20 C.F.R. § 404.1529(c)(3).

9

At step one in his credibility assessment, the Law Judge found that that plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (R. 844.) At step two, the Law Judge found that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were "not credible" prior to December 11, 2006, to the extent they were inconsistent with the Law Judge's RFC assessment. (*Id.*) For the reasons that follow, the undersigned finds that the Law Judge's determination of plaintiff's credibility is supported by substantial evidence.

The Law Judge's decision not to fully credit the plaintiff is supported by the opinions offered by consultative psychologist Overstreet. For instance, Dr. Overstreet noted that plaintiff had a history of responding to assessments with an exaggeration of his symptoms. (R. 506.) She suggested this exaggeration could be the result of malingering or merely wanting others to recognize that he needs help. (*Id.*) Dr. Overstreet found that plaintiff's presentation and report of symptoms were "questionable." (*Id.*) She concluded that the veracity of plaintiff's reported symptoms was also "questionable." (R. 507.)

The March 15, 2005 Functional Capacity Evaluation by physical therapist Mercer further raises legitimate questions about plaintiff's credibility. As noted above, Mercer found that plaintiff did not put forth reliable efforts which impacted their veracity. (R. 461.) He opined that only 48% of the validity items scored as valid. (*Id.*) Dr. Joiner, a treating source, reviewed the March 15, 2005 Functional Capacity Evaluation and agreed that the test results revealed symptom exaggeration/inappropriate illness behaviors. (R. 478.)

In addition, the Law Judge's credibility finding is supported by the opinions rendered by the State agency record reviewing physicians. For instance, Dr. Johnson concluded that plaintiff's statements were only "partially credible." (R. 457.) This finding was echoed by Dr. Williams, another State agency record reviewing physician. (R. 458.)

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

December 6, 2011
Date