CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 10 2012

JULIA C. DUDLEY, CLERK
BY: /s/ 
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TERRY L. ROBERTSON, ) | Case No. 7:11-cv-116 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: James C. Turk |
| MICHAEL J. ASTRUE, ) | Senior United States District Judge |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

This matter is before the Court on Plaintiff Terry Robertson's objections to Magistrate Judge B. Waugh Crigler's Report and Recommendation ("R & R") affirming Michael J. Astrue ("the Commissioner")'s final decision as to Robertson's Social Security benefits. The Commissioner responded, the Court held an in-chambers hearing on March 1, 2012, and the matter is now ripe for disposition. For the reasons set forth below, the Court finds that there is substantial evidence supporting the Commissioner's decision. Accordingly, Robertson's objections are **OVERRULED** and the Magistrate Judge's Report and Recommendation (ECF No. 16) is **ADOPTED** in its entirety. Accordingly, the Commissioner's Motion for Summary Judgment (ECF No. 14) is **GRANTED** and the Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**.

## I.     Procedural History

Plaintiff Terry Robertson ("Robertson") protectively filed for Title II ("DIB") and Title XVI ("SSI") Social Security benefits on August 27, 2004. A Social Security Administration Administrative Law Judge ("ALJ") denied those claims, and after properly exhausting his

administrative remedies with the Commissioner, Robertson filed an action for review in this Court. Then-Magistrate Judge Michael Urbanski, presiding by consent of the parties, remanded the case to the Commissioner for further proceedings. Robertson v. Barnhart, No. 7:06-cv-00729-mfu (W.D. Va. Dec. 12, 2006).

On remand, the ALJ found Robertson disabled as of December 11, 2006. Since Robertson had only accumulated enough quarters to remain insured for DIB through December 31, 2005, this determination resulted in an approval of Robertson's SSI claim but a denial of his DIB claim. *See* Pl.'s Mem. in Supp. of Mot. for Summ. J., ECF No. 13, at 2. Robertson exhausted his administrative remedies and brought the instant action for review of the Commissioner's final decision denying his DIB claims. Pursuant to 28 U.S.C. §636(b)(1)(B), the matter was referred to Magistrate Judge B. Waugh Crigler. The parties filed cross-motions for summary judgment (ECF Nos. 12, 14). On December 6, 2011, Magistrate Judge Crigler issued an R&R recommending that the Court grant the Commissioner's motion and deny Robertson's motion (ECF No. 16). Robertson filed timely objections to the R&R, and the Commissioner responded. Specifically, Robertson argues that the Magistrate Judge erred when he found: (1) the ALJ was not required to call upon the services of a medical advisor; (2) the ALJ properly discounted the medical opinion of Dr. Jan Pijanowski; and (3) the ALJ properly evaluated Robertson's credibility.

**II.  Standard of Review**

When objections are made to the Magistrate Judge's decision on dispositive matters, this Court reviews the Report and Recommendation *de novo*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Orpiano v. Johnson, 687 F.2d 44, 48 (4th Cir. 1982). A court reviewing the Commissioner's administrative determination must determine whether the Commissioner's

findings are supported by substantial evidence and whether they were reached through the application of the correct legal standards. *See* 42 U.S.C. § 405(g) ; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Accordingly, a reviewing court may not substitute its judgment for that of the Commissioner, but instead must defer to the Commissioner's determinations if they are supported by substantial evidence. 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but it is "more than a mere scintilla of evidence [though] somewhat less than a preponderance," Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

### III. Discussion

The award of SSI benefits is not contested. Rather, the only issue before the Court is whether the ALJ properly denied Robertson DIB benefits.[1] In applying for disability benefits, a claimant bears the burden of proving that he is under a disability. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A). A claimant must satisfy the Commissioner that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

---

[1] An ALJ's decision is appealable to the Social Security Appeals Council. Where, as here, the Appeals Council declines to exercise jurisdiction, *see* R. 826, the ALJ's decision is deemed the Commissioner's final decision subject to review by an Article III court. *See* Sims v. Apfel, 530 U.S. 103, 106–07 (2000). Accordingly, the Court will refer to the ALJ's decision in conducting this *de novo* review of the Magistrate Judge's R&R affirming the Commissioner's decision.

3

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

In assessing DIB claims, the Commissioner applies a five-step sequential inquiry. The Commissioner considers whether a claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id. Accord* Fiske v. Astrue, No. 11-1335, 2012 WL 29182, at *2 (4th Cir. Jan. 6, 2012). The fourth and fifth steps of the inquiry require an assessment of the claimant's Residual Functional Capacity ("RFC"), which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. McLain v. Schweiker, 715 F.2d 866, 869 (4th Cir. 1983). With these basic principles in mind, the Court now turns to each of Robertson's objections to the R&R.

### A. Substantial Evidence Supports the ALJ's Decision Not to Employ a Medical Advisor in Determining Robertson's Disability Onset Date

Robertson's first objection to the R&R takes issue with the Magistrate Judge's determination that the ALJ should have called upon the services of a medical advisor in determining his onset date of disability because the medical evidence of record was ambiguous. In determining the onset date of disability, many factors are evaluated together, including the individual's testimony, work history, and the medical evidence. SSR 83-20, Titles II and XVI: Onset of Disability, 1983 WL 31249.

Social Security Ruling ("SSR") 83-20 provides for consultation with a medical expert "when onset must be inferred." But "[t]he Ruling's language does not expressly mandate that

4

the ALJ consult a medical advisor in every case where the onset of disability must be inferred." Bailey v. Chater, 68 F.3d 75, 79 (4th Cir. 1995). Rather, the ALJ need only consult a medical advisor where the medical evidence in the record is ambiguous. *Id.* Here, substantial evidence supports the ALJ's conclusion that evidence of disability onset is not ambiguous. Accordingly, Robertson's first objection is overruled.

In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. SSR 83-20 states that the ALJ should first look to the file before inferences are made. If reasonable inferences cannot be made from the evidence in the file, then it may be necessary to explore other sources of documentation. *Id.* When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. Because this case involves slowly progressive impairments, there is no precise onset date recorded in the medical records. Therefore, it was necessary for the ALJ to infer the onset date of disability from the medical and other evidence that describes the history and symptomology of the disease process. *Id.* The onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record. *Id.*

Here, the ALJ was well within his discretion in declining to call upon the services of a medical advisor. Substantial evidence indicates that Robertson was not disabled within the meaning of the Social Security Act prior to his date last insured. The medical records between August 2004 and December 2006 reveal mild to moderate symptoms. Dr. Murray Joiner saw Robertson on August 17, 2004. Robertson presented with complaints of pain in his shoulder, lower back, and right knee. R. 448–49. Dr. Joiner found only "mild tenderness to palpation over the supraspinatus tendon insertion" in Robertson's right shoulder. R. 450. In spite of this tenderness, Robertson had a full active range of motion in that shoulder. *Id.* Dr. Joiner also

5

Joiner also diagnosed a number of other minor ailments, none of them disabling within the meaning of the Act or within the meaning as it is used in common parlance. *See* R. 451. Dr. Joiner then referred Robertson to physical therapist Bill Mercer for a functional capacity evaluation. Mercer, based on his training and experience, specifically found that Robertson was exaggerating his symptoms to the point where any functional capacity evaluation would be useless in an objective evaluation of whether Robertson could return to work. R. 461. In particular, Mercer noted that it was likely that Robertson was failing to apply maximum strength—that is, not doing his best—when participating in the hand grip test part of the evaluation. *Id.* Mercer's overall impression was that Robertson displayed "unreliable efforts that were diminished or biased by disability behaviors or active choice to portray efforts that [were] less than true." *Id.* In a follow-up visit on March 28, 2005, Dr. Joiner noted that Robertson complained of chronic neck and lower back pain, yet a physical examination revealed largely unremarkable findings. R. 477–78. This evidence is corroborated by the findings of Dr. Frank Johnson, a state agency physician. In October 2004, Dr. Johnson found that the record established "a medically determinable impairment of Myofascial pain syndrome." R. 457. Nonetheless, Dr. Johnson determined that Robertson could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and walk for about six hours in a normal eight hour workday, and had no restrictions in his ability to push or pull. R. 453. Moreover, Dr. Johnson found Robertson's statements to be only "partially credible." R. 457. Nor, as the Magistrate Judge correctly noted, is there any evidence that Robertson suffered disabling mental limitations before that date. R&R at 5. As Robertson pointed out in his submission before the Magistrate Judge, the records do reveal symptoms of clinical depression prior to the date last insured. *See* Mem. in Supp. of Pl.'s Mot. for Summ. J., ECF No. 13, at 5–7. But nothing indicates that the

6

depression was debilitating. To the contrary, the record reveals that as late as March 13, 2006, a psychologist, Dr. Belinda Overstreet, found that "the symptoms related to [Robertson's] grief regarding the death of his wife are *likely to only minimally impair his functioning* as long as he continues counseling." R. 507 (emphasis added). She concluded that while Robertson's mental limitations would mildly impair his ability to understand, recall, and carry out complex or detailed instructions, he was able to understand basic work rules and make simple occupational decisions. R. 507. Dr. Overstreet concurred with Dr. Joiner, Dr. Johnson, and Mr. Mercer that Robertson did not appear forthright and honest in his description of symptoms. R. 506–07. Despite the substantial record in this case, Robertson has never been able to point to any significant objective medical evidence that directly supports his allegation that he was disabled prior to his date last insured.

This is in stark contrast to the medical evidence beginning in December 2006. On December 22, 2006, Robertson was seen at the University of Virginia Pain Management Center. He was diagnosed with "chronic" and "disabling" pain, and x-rays taken that day revealed the presence of grade 1 anterolistheses of L4 on L5 with associated facet degenerative changes. R. 1043. As of February 20, 2007, Robertson began a course of lumbar epidurial steroid injections for his lower back pain. R. 1016. Dr. Christopher Shaffey, a neurosurgeon who examined Robertson in April 2007, concluded that as of that date, "[Robertson was] disabled and will be disabled, whether or not surgery is performed." R. 1002.

Ambiguity does not arise simply because medical opinions and evaluations are inconsistent with the claimant's self-serving, unsupported complaints of pain. If that were the case, a medical advisor would be required in each and every case where the claimant claimed he was disabled as of the date last insured, even in the face of overwhelming medical evidence to

7

the contrary. Such an absurd result was not the intention of our Court of Appeals in <u>Bailey</u>, *supra*. Here, not one, but several medical providers in various fields indicated their opinions that Robertson was exaggerating his medical ailments. The ALJ found that Robertson's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not credible prior to December 11, 2006." R. 844. The Court, having independently reviewed the voluminous record, concludes that the medical evidence was not ambiguous and substantial evidence supports the ALJ's finding that Robertson did not establish disability prior his date last insured. *Accord* <u>Jones v. Astrue</u>, No. 3:09CV590, 2010 WL 2306184, at *6–*7 (E.D. Va. Apr. 21, 2010) (rejecting plaintiff's argument that ALJ was required to consult medical advisor where ALJ considered all evidence of record before selecting date with sufficient medical basis). For these reasons, Robertson's first objection to the R&R is overruled.

### B. Substantial Evidence Supports the ALJ's Decision to Give Little Weight to Dr. Pijanowski's Opinion

Robertson's second objection is that the ALJ improperly rejected Dr. Jan Pijanowski's opinion as to his onset date of disability. The sole basis for this contention is Dr. Pijanowski's response to a question on a Social Security form where he indicated that he believed that Robertson's date of disability was January 1, 2000. Pl.'s Obj. to R&R, ECF No. 17, at 4. It is correct that the opinion of a treating physician is ordinarily entitled to more weight than that of a non-treating physician. 20 C.F.R. § 404.1527(d)(2). Additionally, where the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it will be given controlling weight. *Id.* The ALJ's evaluation of medical opinions must take into account, *inter alia*, whether they are well-supported and how consistent they are with the other evidence in the record. <u>Hines v. Barnhart</u>, 453 F.3d 559, 563 (4th Cir. 2006). If an opinion is

not supported by the medical evidence or is otherwise inconsistent with the record, it may be given "significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). *See also* Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam) (An "ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"). Here, as discussed above, the ALJ properly declined to give controlling weight to Dr. Pijanowski's opinion regarding the disability onset date because such an early onset date is not supported by other evidence in the record.

Where, as here, the ALJ determines that the treating physician's opinion is not to be accorded controlling weight, he must then look to the following factors to determine the amount of weight to which it is entitled: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the treating physician's opinion is supported by objective medical evidence; (4) the extent to which the treating physician's opinion is consistent with the other evidence in the record; (5) the physician's specialty; and (6) other factors such as the treating physician's familiarity with other information in the claimant's case record and the treating physician's understanding of Social Security disability programs and their evidentiary requirements. 20 C.F.R. § 404.1527(d); *Accord* Winford v. Chater, 917 F.Supp. 398, 401 (E.D. Va. 1996). The five-factor test militates against accepting Pijanowski's opinions wholesale. It is undisputed that Dr. Pijanowski only saw Robertson on three occasions, all of them in 2007. Robertson argues that this is not relevant because Pijanowski was employed by Kuumba Community Health and Wellness Center, where Robertson saw other providers before 2007. Thus, Robertson reasons, Dr. Pijanowski had access to Robertson's chart and could have based his opinions on a review of those records. But this argument is a nonstarter. A treating physician's opinion is presumed to carry more weight than

9

that of a non-treating physician because he has actually examined the patient, and his opinions are thus presumed to be more reliable than that of a non-treating physician. Here, Dr. Pijanowski did not become Robertson's treating physician until 2007; when evaluating records prior to that date, his opinion can hardly be afforded greater weight than any other physician who conducted a post hoc review of those records.

Robertson also takes issue with the Magistrate Judge's characterization of Dr. Pijanowski's opinions as "bare conclusions," R&R at 8, but that is exactly what they are. Dr. Pijanowski's opinion was provided on a standard Social Security form. In bold, all-caps, large print, the form advised the provider:

> **IT IS VERY IMPORTANT TO DESCRIBE THE FACTORS THAT SUPPORT YOUR ASSESSMENT. WE ARE REQUIRED TO CONSIDER THE EXTENT TO WHICH YOUR ASSESSEMENT IS SUPPORTED.**

R. 958. The form then proceeded to ask a number of questions as to Robertson's health, with several checkboxes provided for answers—not unlike a commercial survey or a Census form. Below each section, there was a significant amount of free space that asked Dr. Pijanowski to elaborate on his checkmarks; specifically, the form asked what medical or clinical findings supported his conclusions. In response to the question regarding Robertson's postural limitations, Dr. Pijanowski wrote: "L5-SI DDD." R. 959.[2] In response to the question about the medical/clinical findings that supported his conclusions regarding Robertson's environmental limitations, he wrote simply: "Affects the Natur[e] of his disease (DDD)" R. 961. All the other spaces asking Dr. Pijanowski to support his conclusions with specific medical or clinical findings

---

[2] "DDD" presumably refers to degenerative disc disease, which "is not really a disease, but a term used to describe the normal changes in [one's] spinal discs as [one] age[s]." Healthwise, Inc., *Degenerative Disc Disease – Topic Overview*, WebMD, Jul. 21, 2010, http://www.webmd.com/back-pain/tc/degenerative-disc-disease-topic-overview. Its effect on individuals varies, and while "[m]any people have no pain . . . others with the same amount of disc damage have severe pain that limits their activities." *Id.*

10

were left blank. Of particular relevance to the Court's current inquiry, Dr. Pijanowski made no attempt to explain how he arrived at the January 2000 onset date. R. 961. Even so, the ALJ accepted most of Dr. Pijanowski's findings; he rejected only Dr. Pijanowski's determination of the disability date. The Court finds that substantial evidence supports the ALJ's rejection of Dr. Pijanowski's opinion that Robertson was disabled as of January 1, 2000. Robertson's objection as to this point is overruled.

### C. Substantial Evidence Supports the ALJ's Assessment of Credibility

Robertson's final objection is that the Magistrate Judge erred when he concluded that the ALJ properly evaluated his pain complaints and credibility. This too must be overruled. The Court does not cavalierly second-guess an ALJ's credibility determinations. *See* Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations . . . are to be given great weight"). In evaluating subjective complaints, the ALJ should conduct a two-step inquiry. First, the ALJ should determine if there is objective medical evidence consistent with the existence of a medical impairment that could "reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (emphasis omitted). If, and only if, the ALJ finds that such objective medical evidence exists, he must move on to evaluate the "intensity and persistence" of a claimant's pain and the extent to which it affects his ability to work. *Id.* at 595. As the Magistrate Judge correctly noted, the second step of the credibility analysis requires that the ALJ take into account the claimant's statements, as well as

> (1) the claimant's daily activities; (2) the location duration, frequency, and intensity of the pain or other symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatments, other than medication, received for relief of symptoms; (6) measures used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions caused by symptoms.

11

R&R at 9 (citing 20 C.F.R. § 404.1529(c)(3)).

Here, the ALJ conducted a reasoned and thoughtful analysis of Robertson's credibility, employing the two step process, evaluating his subjective complaints and finding them to be inconsistent with the medical evidence. The ALJ took note of the medical evidence, as well as evidence of Robertson's activities. He noted the results of the functional capacity evaluation and the various' doctors impressions of Robertson's veracity and the extent of his impairments. Robertson testified before the ALJ, and the ALJ had an opportunity to observe his demeanor. *See* R. 843–45. It is not the Court's role to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the agency." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002) (quoting Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)) (internal quotation marks omitted). The ALJ's decision to find Robertson only partially credible finds substantial support in the record. The Court finds no extraordinary circumstances that compel it to take the remarkable step of the ALJ's credibility determinations. Accordingly, Robertson's final objection is overruled.

### IV.   Conclusion

The ALJ applied the correct legal standards and there is substantial evidence to support his factual findings. Robertson's Objections to the Magistrate Judge's R&R granting the Commissioner's Motion for Summary Judgment and denying Robertson's Motion for Summary Judgment are **OVERRULED**. An appropriate Order shall issue this day.

ENTER: This 10th day of April, 2012.

/s/ James C. Turk
Senior United States District Judge